Ryan G. Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Scott M. Malzahn (Bar No. 229204)
  smalzahn@bakermarquart.com
BAKER MARQUART LLP
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

Attorneys for Defendants and
Counterclaimants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX TELEVISION STATIONS, INC., TWENTIETH CENTURY FOX FILM CORPORATION, and FOX BROADCASTING COMPANY, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FILMON X, LLC, ALKIVIADES "ALKI" DAVID, FILMON.TV NETWORKS, INC., FILMON.TV, INC., FILMON.COM, INC. and DOES 1 through 3, inclusive, <br><br> Defendants. | CASE NO. CV12-06921-GW (JCx) <br><br> Consolidated with Case No. CV12-6950-GW(JCx) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Filed concurrently with Separate Statement, Supplemental Declarations of Alkiviades David, Mykola Kutovyy, and Kim Hurwitz, Supplemental Request for Judicial Notice, Request for Evidentiary Ruling and [Proposed] Order] <br><br> Judge: Hon. George H. Wu <br> Courtroom: 10 <br><br> Hearing Date: July 16, 2015 <br> Time:  8:30 a.m. |

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL HISTORY ....................................................................3

      A.    The New York Action..................................................................3

      B.    This California Action. ...............................................................3

III.  STATEMENT OF FACTS ......................................................................4

IV.   ARGUMENT ..........................................................................................5

      A.    Applicable Legal Standard..........................................................5

      B.    FilmOn X's Section 111 Defense and Counterclaim Are Not
            Barred by *Res Judicata*. ..........................................................6

            1.    The New York Action Does Not Bar FilmOn X's Claims
                  and Defenses in This Action..............................................6

            2.    The Networks Are Judicially Estopped From Contending
                  That The Injunction In New York Precludes FilmOn X
                  From Raising A Section 111 Defense And Counterclaim. ..........7

            3.    The *Aereo* Opinion Is An Intervening Decision That
                  Warrants Judicial Review. .................................................8

      C.    *Aereo* Indicates Section 111 Should Be Interpreted In A
            Technology Agnostic Manner, Consistent With 1976 Copyright
            Act Amendments...........................................................................8

      D.    The Networks' Reading Of Section 111 Is Inconsistent With The
            Plain Statutory Text, And The Legislative History. ..............10

            1.    As Originally Enacted, Section 111 Was Written Broadly
                  To Allow Cable Systems To Use "Wires, Cables, And Other
                  Communication Channels."................................................11

            2.    Congress' 1994 Amendment Of Section 111 Clarified The
                  List Of Communication Channels Was Not Meant To Be
                  Exhaustive.........................................................................13

            3.    The Enactment Of The Satellite Home Viewer Act Of 1988
                  Does Not Evince A Congressional Intent To Deny A Cable
                  License To Internet Retransmission Services..................14

            4.    The Mere Fact That Internet Retransmission Services Are
                  Capable Of Retransmitting OTA Content Beyond A
                  Specific Local Area Does Not Mean That Such Services
                  Cannot Qualify As Cable Systems. ..................................15

            5.    FilmOn X's System Is Designed To Restrict
                  Retransmissions On A Geographic Basis...........................17

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

i

6.   There Is No Requirement In The Copyright Act That A Cable System Own Or Control The Transmission Path............17

E.   The *ivi* Decisions Do Not Control This Case. ......................................18

1.   The Policy Views Of The Copyright Office Are Not Entitled To *Chevron* Deference..............................18

2.   The Copyright Office Has Found Companies "Substantially Similar" To Traditional Cable Systems Entitled To A License. ................................................20

3.   FilmOn X Has Demonstrated An Ability And Willingness To Comply With FCC Rules And Regulations. ..........................21

F.   FilmOn X Has Satisfied Section 111's Requirements..........................22

1.   FilmOn X Charged Subscribers For Local Channel Packages And Its Provision Of Some Content On A Free Trial Basis Does Not Preclude It From Being A Cable System. ................................................23

2.   FilmOn X Did Not Materially Alter The Content Of Particular Programs Or The Commercials In The Primary Transmission. ................................................23

3.   FilmOn X Filed Corrected Statements Of Account. ..................25

4.   FilmOn X's Retransmissions Were Permissible. .......................25

IV.   CONCLUSION ................................................25

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
   134 S.Ct. 2498 (2014) ................................................................................ *passim*

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................5

*Cartoon Network LP, LLP*
   536 F.3d 121 (2d Cir. 2008)…………………………………….....................4

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..............................................................................5

*Christensen v. Harris County*,
   529 U.S. 576 (2000) ........................................................................ 19, 20

*Davis v. Michigan Dept. of Treasury*,
   489 U.S. 803 (1989) ..............................................................................9

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ..........................................................................9, 12

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
   CV12-6921-GW (C.D. Cal., filed Aug. 13, 2012) ................................................1

*Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*,
   559 U. S. 280 (2010)………………………………………………………...9

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ..............................................................................7

*Hubbard Broad., Inc. v. S. Satellite Sys., Inc.*,
   777 F.2d 393 (8th Cir. 1985) ........................................................... 15, 24

*James v. U.S.*,
   550 U.S. 192 (2007) ..........................................................................11

*King v. Burwell*,
   2015 WL 2473448………………………………………………….....9

FILMON X'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

*Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*,
750 F.2d 731 (9th Cir. 1984) ...................................................................6

*Maharaj v. Bankamerica Corp.*,
128 F.3d 94 (2d Cir. 1997) .....................................................................6

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...............................................................................7

*United States v. Mead Corp.*,
533 U.S. 218 (2001) ......................................................................... 19, 20

*Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*,
940 F.2d 1467 (11th Cir. 1991)............................................................25

*NBCUniversal Media, LLC v. FilmOn X, LLC*,
CV12-06950-GW (C.D. Cal., filed Aug. 13, 2012)................................1

*Nordhorn v. Ladish Co., Inc.*,
9 F.3d 1402 (9th Cir. 1993) ....................................................................6

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ..................................................................6

*Rissetto v. Plumbers & Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) ....................................................................7

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992) ...............................................................................8

*San Juan Cable LLC v. Telecommunications Regulatory Bd. of Puerto Rico*,
598 F. Supp. 2d 233 (D.P.R. 2009) ......................................................23

*Satellite Broad. and Comms. Association of America v. Oman*,
17 F.3d 344 (1994) ...............................................................................14

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) .............................................................................19

*State Farm Mut. Auto Ins. Co. v. Duel*,
324 U.S. 154 (1945) ...............................................................................8

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON X'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Tasini v. New York Times Co.*,
  206 F.3d 161 (2d Cir. 2000) ...................................................................11

*West Coast Life Ins. Co. v. Merced Irr. Dist.*,
  114 F.2d 654 (9th Cir. 1940) ...................................................................8

*WGN Continental Broadcasting v. United Video, Inc.*,
  693 F.2d 622 (7th Cir. 1982) .................................................................12

**Federal Statutes**

17 U.S.C. § 106(1)-(5)……………………………………………….......3

17 U.S.C. § 111 ............................................................................... *passim*

17 U.S.C. § 111(c)(1) .................................................................... 21, 25

17 U.S.C. §§ 111(c)(1), (c)(2), (e)(1)(F), (f)(2) ......................................16

17 U.S.C. § 111(c)(4) ...................................................................... 15, 16

17 U.S.C. §§ 111(d)(1)(A), (f)(5)(B) ......................................................16

17 U.S.C. § 111(f) ............................................................................ *passim*

17 U.S.C. § 111(f)(3) .............................................................................16

47 U.S.C. § 522(7) .................................................................................18

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

v

## I.   INTRODUCTION

FilmOn X[1] has upheld its burden of proving that it is entitled to a copyright license as a cable system under 17 U.S.C. section 111 ("Section 111"). Accordingly, this Court should deny the Networks'[2] motion for partial summary judgment. Each of the Networks' theories lacks legal merit, relies on demonstrably misstated or disputed facts or is simply inapposite.

*Res judicata* is plainly inapplicable. The events at issue in this action arose after the prior case against FilmOn.Com, Inc. ("FilmOn.Com") in the Southern District of New York closed and involved different parties, different technology and different evidence. Until recently, the Networks never asserted that FilmOn X's mini-antenna/DVR technology violated the terms of the injunction from the prior action. Instead of moving to enforce that injunction, the Networks made the strategic decision to file this new lawsuit and, while arguing that this Court should depart from Second Circuit authority to the contrary, won a preliminary injunction. Having sought and won relief from this Court, the Networks are now estopped from contending that FilmOn X's defenses in this action are barred by *res judicata*. Indeed, in light of the intervening decision by the Supreme Court in *American Broadcasting*

---

[1] For the purposes of the parties' cross-motions for summary adjudication, "FilmOn X" refers to defendant and counterclaimant FilmOn X, LLC, which operates the service at issue in this action. Although FilmOn X is the applicable legal entity, its other co-defendants, including FilmOn.TV, Inc., FilmOn.TV Networks, Inc., FilmOn.com, Inc. and Alkiviades David preserved their right to raise Section 111 as a defense and join in this motion on that basis. FilmOn X's co-defendants reserve the right to argue that certain of them were not and are not involved in broadcast transmissions in any way. In fact, many of them are not.

[2] The term "Networks" refers to the Fox plaintiffs in the lead action captioned *Fox Television Stations, Inc. v. FilmOn X, LLC*, CV12-6921-GW (C.D. Cal., filed Aug. 13, 2012) (hereinafter, the "Fox Dkt."), and the NBC plaintiffs in the consolidated action captioned *NBCUniversal Media, LLC v. FilmOn X, LLC*, CV12-06950-GW (C.D. Cal., filed Aug. 13, 2012) (hereinafter, the "NBC Dkt.").

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

*Companies, Inc. v. Aereo, Inc.* ("*Aereo*"), 134 S.Ct. 2498 (2014), this Court should give a "fresh look" at the Second Circuit's prior jurisprudence. (Dkt. 136.)

The Supreme Court reasoned that companies like FilmOn X are "substantially similar" to traditional cable systems. Following that reasoning, FilmOn X is entitled to a compulsory license. The Networks now ask this Court to insert new legal requirements into the Copyright Act to ensure cable systems may never migrate to the Internet. They argue a cable system is "inherently localized" and suggest that a cable system must own or control the entire transmission path from the headend to the user. However, this Court should not usurp the role of the Federal Communications Commission (the "FCC") by inventing new legal requirements to restrict the use of the Section 111 license, especially when the FCC is poised to adopt a proposal to treat certain over-the-top video providers (such as FilmOn X) as multichannel video programming distributors ("MVPDs"). Indeed, a decision barring Internet retransmission services from the Section 111 license would frustrate the FCC's ability to modernize. Moreover, the Networks' extreme position would freeze technological development and does not accord with the plain text of the 1976 amendments to the Copyright Act or its legislative history.

FilmOn X has satisfied the conditions required to obtain a Section 111 license. As with other cable systems, FilmOn X charged many subscribers for access to broadcast content, and it did not willfully alter the program content, commercials or station announcements. It also has filed the necessary corrections to Statements of Accounts with the Copyright Office and has not violated any FCC rules and regulations. To the contrary, FilmOn X has agreed to voluntarily abide by FCC rules and regulations applicable to other cable operators and MVPDs. This Court should rule as a matter of law that FilmOn X was and is entitled to a Section 111 license. At a minimum, this Court should rule that a triable issue of fact exists that warrants denial of the Networks' motion.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

## II.    PROCEDURAL HISTORY

**A.    The New York Action.**

In October 2010, certain broadcast television networks filed a copyright action in the Southern District of New York against FilmOn.Com, Inc. ("FilmOn.Com"). (SOF 1.) The broadcasters alleged that FilmOn.Com violated copyright law by streaming broadcast content over the Internet. (SOF 2.) At that time, FilmOn.Com received over-the-air broadcast signals from cable and streamed the content over the Internet to users on a live basis. (SOF 3.) FilmOn.Com did not make copies of broadcast content for viewing by its users, and it did not offer any time-delayed retransmissions. (SOF 4.) Subscribers were required to first purchase and download FilmOn.Com proprietary software. (SOF 5.)

Pursuant to a settlement, on August 9, 2012, the district court entered a Stipulated Consent Judgment and Permanent Injunction (the "Injunction") that enjoined FilmOn.Com and its affiliates "from infringing, by any means, directly or indirectly, any of plaintiffs' exclusive rights under Section 106(1)-(5) of the Copyright Act . . . ."  (SOF 6.) Since the issuance of the Injunction, FilmOn.Com and its affiliates have not used the technology at issue in that action. (SOF 7.)

**B.    This California Action.**

This action began with FilmOn X's mini-antenna/DVR technology, which FilmOn X began to operate after the New York action was settled. Until the Supreme Court decided *Aereo*,[3] the Networks never sought to enforce the Injunction against FilmOn X's mini-antenna/DVR technology. (SOF 8.) Instead, the Networks chose to file separate copyright actions against FilmOn X in California and Washington, D.C.,

---

[3] On August 15, 2014, Judge Buchwald found the defendants in the New York action in contempt for violation of the Injunction. (SOF 9.) That decision is on appeal to the Second Circuit, which has scheduled oral argument for August 31, 2015. (SOF 10.)

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  against FilmOn X over its mini-antenna/DVR technology. (SOF 11.)

2  ### III.   STATEMENT OF FACTS[4]

3  FilmOn X incorporated in Delaware on July 16, 2012. (SOF 12.) In August

4  2012, FilmOn X launched a remote mini-antenna/DVR service that allowed users to

5  access over-the-air programming via the Internet. (SOF 14.) FilmOn X designed this

6  technology to comply with *Cartoon Network LP, LLP*, 536 F.3d 121 (2d Cir. 2008)

7  ("*Cablevision*"). (SOF 15.)

8  Unlike the service at issue in the New York action, FilmOn X's mini-

9  antenna/DVR technology provided users with both time-delayed[5] and nearly

10  simultaneous retransmissions of broadcast content. (SOF 16.) Users are not required

11  to purchase and download proprietary software, but instead content is delivered

12  directly to the user through FilmOn X's Internet-based platform that allows the user

13  to rely on individually accessed remote equipment hosted by FilmOn X. (SOF 17.)

14  FilmOn X charged between about $5.95 and $19.95 for monthly local channel

15  packages, and between about $59.95 and $199.00 for annual packages. (SOF 18.)

16  As with other cable providers, FilmOn X's service operates by capturing

17  broadcast signals on the public airwaves and retransmitting those signals to

18  individual users. (SOF 19.) FilmOn X has physical facilities located in different

19  regions of the country where it houses antennas and other electronic equipment used

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

---

20

21  [4] For the sake of brevity and to avoid inundating this Court with duplicative

22  material, FilmOn X provides an abbreviated discussion of the statement of facts in

23  this brief. A more complete discussion of the relevant facts is contained in FilmOn

24  X's Memorandum of Points and Authorities in Support of its Motion for Summary

25  Adjudication, which was filed contemporaneously with the Networks' motion. (*See* Dkt. 167.)

26  [5] To date, the parties have not yet briefed this Court on whether FilmOn X's time-

27  delayed retransmissions constitute public performances within the meaning of the

28  Transmit Clause. The Supreme Court's opinion in *Aereo* did not address this issue. *See Aereo*, 134 S.Ct. 2498, 2517 (June 25, 2014).

FILMON X'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

to capture, record and retransmit OTA programming via the Internet. (SOF 20.) The antennas in these facilities received primary transmissions of OTA programming made by network stations, such as KTTV Channel 11 in Los Angeles. (SOF 21.) FilmOn X retransmitted this programming to individual users through secondary retransmissions over the Internet. (SOF 22.) FilmOn X's secondary transmissions were transmitted without any material alteration of the featured content, commercials or station advertisements. (SOF 39.)

At present, FilmOn X is not affirmatively regulated by the FCC (SOF 23), but the FCC adopted a Notice of Proposed Rulemaking ("NPRM") in December 2014 that would treat certain over-the-top providers as multichannel video programming distributors ("MVPDs") under the Communications Act. (SOF 24.) In a recent speech at the Brookings Institution, on June 26, 2015, FCC Chairman Wheeler stated that he expected a vote on this proposal by the fall of 2015. (SOF 25.) He has also stated that "[v]ideo is no longer tied to a certain transmission technology, so our interpretation of MVPD should not be tied to transmission facilities." (SOF 26.)

## IV.   ARGUMENT

### A.   Applicable Legal Standard.

On summary judgment, the moving party bears the burden of establishing the nonexistence of a "genuine issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

**B.      FilmOn X's Section 111 Defense and Counterclaim Are Not Barred by *Res Judicata*.**

**1.      The New York Action Does Not Bar FilmOn X's Claims and Defenses in This Action.**

The consent judgment in the New York Action does not preclude FilmOn X's Section 111 defense. *Res judicata* bars a later suit only where the previous suit (1) involved the same "claim" as the later suit; (2) reached a final judgment on the merits; and (3) involved the same parties or their privies. *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1404 (9th Cir. 1993). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). The Second Circuit has held that:

> In determining whether the *res judicata* doctrine applies, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. Rather, the first judgment will preclude a second suit only when it involves the same "transaction" or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also present in the first.

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (internal citations omitted). "Thus, as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play." *Id.*; *see also Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984).

This action does not arise out of the same nucleus of facts as the New York Action and concerns events that ***occurred after*** the conclusion of that action. Unlike the New York Action, this action concerns both time-delayed and nearly simultaneous transmissions involving a factually distinguishable mini-antenna/DVR

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

technology.[6]  Moreover, the alleged infringement that occurred involves different copyrighted works and different technologies. In addition, FilmOn X has now agreed to voluntarily abide by FCC rules and regulations governing MVPDs in any future transmissions and has developed new robust systems to ensure such compliance. (SOF 34-38.) Accordingly, *res judicata* does not bar FilmOn X's Section 111 defense and counterclaim.

> ### 2.   The Networks Are Judicially Estopped From Contending That The Injunction In New York Precludes FilmOn X From Raising A Section 111 Defense And Counterclaim.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600–01 (9th Cir. 1996). "This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal quotations omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) ("[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle").

The Networks' argument that the Injunction entered in New York bars FilmOn X's Section 111 defense is clearly inconsistent with its prior decision to petition this Court for relief. The Networks made the strategic decision to institute this separate

---

[6] For this reason, this Court previously stated that "if Plaintiffs thought that FilmOn's mini-antenna system was covered by the consent judgment (or really, if they thought they could have prevailed under Second Circuit law), they should have gone back to Judge Buchwald instead of coming here."  (Dkt. 136.)

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

action in California, rather than move to enforce the Injunction in New York. (Dkt. 136.) "Having chosen to sue here (and after obtaining injunctive relief covering the Ninth Circuit geographic area)," the Networks are estopped from arguing that the New York Action bars FilmOn X from defending itself in this action. (Dkt. 136.) This Court should not sanction such blatant forum shopping.

### 3.   The *Aereo* Opinion Is An Intervening Decision That Warrants Judicial Review.

"*[R]es judicata* is no defense where between the time of the first judgment and the second there has been an intervening or a change in the law creating an altered situation."  *State Farm Mut. Auto Ins. Co. v. Duel*, 324 U.S. 154, 162 (1945); *see also West Coast Life Ins. Co. v. Merced Irr. Dist.,* 114 F.2d 654, 662 (9th Cir. 1940); *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 382 (1992) (consent decrees may be modified "when the statutory or decisional law has changed to make legal what the decree was designed to prevent."). *Aereo* calls the judgment in the New York action into serious doubt. Thus, whatever relevance the New York Action may arguably have had to this case, the *Aereo* decision is "an intervening decision . . . creating an altered situation" that requires this Court to address the issues in this case. *See State Farm*, 324 U.S. at 162. Equity requires that this Court render a decision on the merits of FilmOn X's Section 111 defense and counterclaim.

### C.   *Aereo* Indicates Section 111 Should Be Interpreted In A Technology Agnostic Manner, Consistent With 1976 Copyright Act Amendments.

The Supreme Court based its holding that Aereo publicly performs on its finding that Aereo is "substantially similar to" and "is for all practical purposes a traditional cable system[,]" which Congress intended to regulate when it amended the Copyright Act in 1976. *Aereo,* 134 S.Ct. at 2506-07. The *Aereo* decision is clearly relevant in determining whether an Internet retransmission service may fit within the plain meaning of a cable system under the Copyright Act.

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

The Transmit Clause, the redefined public performance right and Section 111 were all enacted in 1976 as part of a coherent regulatory scheme "to bring the activities of cable systems within the scope of the Copyright Act." *Aereo,* 134 S.Ct. at 2505-06. Congress passed these amendments "in large part to reject" the Supreme Court's earlier determination that community antenna television ("CATV") systems do not engage in performances. *Id*. at 2505. At the same time, "Congress further created a new section of the Act to regulate cable companies' public performances of copyrighted works. Section 111 creates a complex, highly detailed compulsory licensing scheme that sets out the conditions, including the payment of compulsory fees, under which cable systems may retransmit broadcasts." *Id*. at 2506.

The Networks attempt to distinguish *Aereo* on the ground that the "Supreme Court discussed Aereo's similarity to CATV systems solely for the purpose of determining whether Aereo 'performs' within the meaning of the Transmit Clause." (Mot. at 8.) In essence, the Networks urge this Court to read the Transmit Clause and Section 111 in isolation from one another. But it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809 (1989). "A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into an harmonious whole[.]" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotations and citations omitted); *see also King v. Burwell*, 2015 WL 2473448, at *8 (holding that "[o]ur duty, after all, is 'to construe statutes, not isolated provisions'") (quoting *Graham County Soil and Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U. S. 280, 290 (2010)).

In *Aereo*, the Court adopted a technology agnostic interpretation of the 1976 amendments, reasoning that the mere "substitut[ion] of new technologies for old" does not take cable systems out of the comprehensive regulatory scheme established by Congress. *Id*. at 2509. The Court repeatedly compared FilmOn X to traditional

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

9

cable systems, and dismissed minor technical distinctions between its retransmission technologies and older technical systems as legally immaterial. *See, e.g., id.* at 2511 ("In sum, having considered the details of Aereo's practices, we find them highly similar to those of the CATV systems in *Fortnightly* and *Teleprompter*. And those are activities that the *1976 amendments* sought to bring within the scope of the *Copyright Act.*"); *id.* at 2507 (discussing "Aereo's overwhelming likeness to the cable companies targeted by the *1976 amendments*") (emphasis added).

While the Supreme Court did not find that Aereo was entitled to a Section 111 license, the Court's discussion is instructive. In the first question in oral argument, Justice Sotomayor suggested that the Court could avoid the thorny question of what constitutes a public performance by finding that Aereo is entitled to a Section 111 license as a cable system: "I look at the definition of a cable company, and it seems to fit." *See* Request for Judicial Notice in Support of Defendants' Motion for Summary Adjudication of Defendants' Counterclaim for Declaratory Relief and Defendants' Section 111 Affirmative Defense ("RJN"), Dkt. No. 169, Ex. E (Transcript of Oral Argument at 4:1-13, *Aereo*, 134 S.Ct. 2498 (2014) (No. 13-461)). Similarly, Justice Breyer, who authored the majority opinion, expressed concern about "tak[ing] [an Internet-based service] out of the compulsory licensing system" because it would limit the public's access to copyrighted material. RJN, Ex. E (*Id.* at 53:21–54:5). The majority adopted this cable-based reasoning in its written opinion. This Court should follow this reasoning and find that FilmOn X is entitled to a statutory copyright license as a cable system.

## D. The Networks' Reading Of Section 111 Is Inconsistent With The Plain Statutory Text, And The Legislative History.

The Networks broadly argue that "Internet retransmission services" fall outside the scope of the Section 111 compulsory license. (Mot. at 17.) They do not limit this argument to FilmOn X, but instead contend that *any service* using the Internet to deliver video programming cannot qualify as a cable system. This Luddite

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

interpretation must be rejected. Congress intended to allow cable systems to develop new technologies to retransmit broadcast content.

### 1. As Originally Enacted, Section 111 Was Written Broadly To Allow Cable Systems To Use "Wires, Cables, And Other Communication Channels."

Congress enacted Section 111 to ensure that cable systems would be able to continue to provide access to OTA programming to the American public, regardless of the communication channel used to deliver that content. As originally enacted, Section 111(f) defined a cable system as encompassing facilities that deliver secondary transmissions by "wires, cables, or other communications channels to subscribing members of the public[.]" 17 U.S.C. § 111(f) (emphasis added). Content delivered over the Internet travels over the same types of communication channels (*e.g.,* wires, cables, and microwaves) explicitly approved in Section 111. (SOF 27.)

Even assuming the words "wires" and "cables" do not adequately describe transmissions made over the Internet (and they do), the phrase "other communications channels" is clearly intended to expand the type of channels that may be used. Where, as here, a statute is written to set forth illustrative but non-exhaustive examples, courts consistently interpret the statute in a flexible manner to encompass other examples that are not explicitly mentioned in the text. *See, e.g., James v. U.S.*, 550 U.S. 192, 200 (2007) (construing the term "otherwise involves" as a "broad residual provision" that indicates an intent to include persons or things of the same type as the preceding examples).

While the Networks assert that this Court should construe Section 111 narrowly (see Mot. at 16), the general principle that exceptions to general rules are narrowly construed "to preserve the primary operation of the provision"[7] certainly does not authorize a court to rewrite or nullify the plain statutory text of an exception.

---

[7] *See Tasini v. New York Times Co.*, 206 F.3d 161, 168 (2d Cir. 2000).

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

Instead, the Court should interpret the plain language of the statute as a whole to give full force and effect to all of its provisions. *Food & Drug Admin.,* 529 U.S. at 133; *see also King*, 2015 WL 2473448, at *8. Indeed, the legislative record confirms that the exclusive rights of copyright holders under Section 106 "must be read in conjunction with the" limitations, qualifications, or exemptions found in subsequent portions of the statute. Supp. RJN, Ex. A (H.R. Rep. No. 94-1476 at 61 (1976)).

In any event, the term "other communication channels" is not "language of limitation." (*See* Mot. at 16). To the contrary, it expands the types of communications channels that may be used by a cable system beyond wires and cables to other technologies that may be developed or used in the future to deliver video programming content. As the Seventh Circuit has explained, "Congress probably wanted the courts to interpret the definitional provisions of the new act flexibly, so that it would cover new technologies as they appeared, rather than to interpret those provisions narrowly and so force Congress periodically to update the Act." *See WGN Continental Broadcasting v. United Video, Inc.*, 693 F.2d 622, 627 (7th Cir. 1982).

Clearly, Congress did not intend to limit the technologies that cable systems could use to those technologies that existed in 1976. The Networks selectively quote a 1991 Rulemaking (before widespread use of the Internet) in which the Copyright Office acknowledged that Section 111 was written flexibly to accommodate new technological developments. (Mot. at 15.) The quote in its entirety states:

> While the Copyright Office does not agree with commentators who contend that Congress intended that the definition of cable system be applied broadly in the future to include any and all video delivery facilities that are analogous to cable systems and could arguably justify a compulsory license for the same policy reasons, *nor does the Office find that Congress intended to restrict the compulsory license solely to the specific cable system technology of 1976.* The Office acknowledges that several courts, cited to by commentators in this proceeding, have found, with respect to the passive carrier exemption in 111(a)(3), that *Congress did not intend to freeze the compulsory license in a way that would discourage technological development and implementation.*

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

12

Appendix of Copyright Office and Other Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Appendix"), Dkt. No. 162.4, Ex. 8 (*Cable Compulsory License; Definition of Cable Systems*, 56 Fed. Reg. 31580, 31594 (July 11, 1991) (italics added)).

### 2. Congress' 1994 Amendment Of Section 111 Clarified The List Of Communication Channels Was Not Meant To Be Exhaustive.

The Networks assert in a conclusory fashion that the amendment to the Copyright Act in 1994 that added the term "microwave" to the list of enumerated communication channels in Section 111(f) demonstrates that Congress did not intend the Section 111 license to extend to Internet retransmission services. (Mot. at 18.) But Congress emphasized that this amendment was a *clarification* of the scope of the definition, not a change in current law:

> The proposed legislation amends the definition of the term "cable system" contained in section 111(f) *to clarify* that the cable compulsory license applies not only to traditional wired cable television systems, but also to multichannel multipoint distribution service systems, also known as "wireless" cable systems.

RJN, Ex. J (S. Rep. 103-407, at 14). Congress's intent was to overrule a decision of the Copyright Office and to place "wireless cable" on a competitive footing with wired cable for purposes of the compulsory license by adding the phrase "or microwave" to the statutory text. *Id*. So strong was Congress's belief that the original list of communication channels listed in Section 111(f) was not meant to be exhaustive, a congressional report explained that this amendment was intended to "overturn an *erroneous interpretation* of the definition of 'cable system' by the Copyright Office," and was "necessary because of an *unnecessarily restrictive interpretation* by the Copyright Office of the phrase 'or other communications channels' in the same definition."  RJN, Ex. I (H.R. Rep. 103-703, 103d Cong., 2d Sess. at 6, 13). Given that the 1994 amendment was intended to clarify the law and overturn an erroneous decision, the Copyright Office subsequently amended its regulations to retroactively recognize the eligibility of "wireless cable" for the

13

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  Section 111 compulsory license. RJN, Ex. K (*Cable Compulsory License; Definition*

2  *of a Cable System;* 59 FR 67635-01 (rel. Dec. 30, 1994)).

3       In short, the 1994 amendment of the Copyright Act supports a broad,

4  technology agnostic reading of a cable system and does not support the specious

5  claim that Congress intends to amend the Copyright Act every time a new

6  retransmission technology emerges.

7       **3.  The Enactment Of The Satellite Home Viewer Act Of 1988 Does Not**
            **Evince A Congressional Intent To Deny A Cable License To**

8           **Internet Retransmission Services.**

9       The Networks also argue that the fact that Congress created a separate

10  compulsory license scheme for satellite carriers somehow demonstrates that Internet

11  retransmission services are not entitled to a Section 111 license. (Mot. at 12, 20.)

12  Again, the Networks misinterpret the legislative history.

13       In 1994, the Eleventh Circuit initially found satellite carriers were entitled to a

14  Section 111 license. *Satellite Broad. and Comms. Association of America v. Oman*,

15  17 F.3d 344 (1994). The Copyright Office had stated that Satellite Master Antenna

16  Television ("SMATV") "may satisfy the requirements to be considered a cable

17  system [under section 111]," and "propose[d] [to Congress] that SMATV facilities

18  should be eligible for a cable compulsory license."  1991 Rulemaking at 31593-94.

19  Ultimately, after much litigation, Congress settled the issue, passing the Satellite

20  Home Viewer Act to create a statutory scheme specific to satellite carriers. In light of

21  that new and more specific statute, it is now clear that satellite carriers are regulated

22  by one statute and cable systems are regulated by another.[8]

23

24  _____

25      [8] In any event, satellite carriers may not fit within the plain text of Section 111

26  because satellites are not terrestrial based. Section 111(f) requires that a cable
   system's facilities be "located in any State, Territory, Trust Territory, or

27  Possession[.]"  17 U.S.C. § 111(f). Unlike satellite carriers which rely on satellites
   orbiting the earth to receive and retransmit broadcast content, FilmOn X has facilities

28    (footnote continued)

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

The passage of the 1988 Satellite Home Viewer Act did not demonstrate Congress' intention that statutory copyright license to be limited to cable systems with a "localized, distribution network." Rather, in passing the Satellite Home Viewer Act, Congress created a statutory copyright license for satellite carriers despite the fact that satellite carriers are not inherently local in nature and possess the ability to distribute OTA content across an entire continent. In short, this Act shows that Congress is comfortable with granting statutory copyright licenses to commercial entities capable of widely distributing OTA content outside local communities.

### 4.   The Mere Fact That Internet Retransmission Services Are Capable Of Retransmitting OTA Content Beyond A Specific Local Area Does Not Mean That Such Services Cannot Qualify As Cable Systems.

The Networks argue that a reading of the Copyright Act as a whole demonstrates that Congress intended "to confine the Section 111 license to inherently localized transmission media of limited availability."  (Mot. at 19 (internal citations omitted).) If accepted, this view "would largely freeze for section 111 purposes both technological development and implementation. And, by consequence, it would force both primary and secondary transmitters alike to forego available, economically feasible technology. [This Court should] reject this stand still status quo oriented view of the compulsory licensing provisions."  *Hubbard Broad., Inc. v. S. Satellite Sys., Inc.*, 777 F.2d 393, 400 (8th Cir. 1985).

In general, Congress wisely left it to the FCC to determine the specific rules and regulations, if any, that cable systems must comply with to obtain a statutory copyright license. In those instances where Congress intended to limit the retransmissions of broadcast signals on a geographic basis, it did so expressly. In Section 111(c)(4), Congress explicitly prohibited cable systems from carrying the

with headends located in states across the country. (*See* SOF 20.)

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

signals of Canadian and Mexican broadcast stations in certain situations. *See* 17 U.S.C. § 111(c)(4). Otherwise, the Copyright Act does not require that a cable system limit its retransmissions on a geographic basis.[9]

In *Hubbard*, the Eighth Circuit recognized that a cable system may retransmit broadcasting to non-local customers under the Section 111 license. In that case, a network of satellite, microwaves, and cables allowed cable systems to deliver content to cable subscribers throughout the U.S., rebroadcasting an Atlanta television station nationwide. In doing so, the content of the Atlanta based television station was made available to thousands of individual cable systems and approximately 30,000,000 consumers. *Id.* at 398. The Eighth Circuit ruled that the defendant was entitled to a passive carrier exemption under Section 111(a)(3). *Id.* at 401. It held that "the retransmission of network programming, including network programming which is broadcast in 'distant' markets, does not injure the copyright owner [since] [t]he copyright owner contracts with the network on the basis of his programming reaching all markets served by the network and is compensated accordingly." *Id.* at 396 (citing Supp. RJN, Ex. A (H.R. Rep. No. 1476, 94th Cong. 2d Sess. 90 reprinted in U.S. Code Cong. & Ad. News at 5704)).

---

[9] Although the Networks cite to various statutory provisions in Section 111 as support for their claim that cable systems are "inherently localized" in nature (Mot. at 16), none of those provisions actually say that. Section 111(f)(3) broadly defines a cable system without regard to whether it operates in one or more local communities. It then states that "*[f]or purposes of determining the royalty fee under subsection (d)(1), two or more cable systems in contiguous communities . . . shall be considered as one cable system.*" 17 U.S.C. § 111(f)(3) (italics added). Other provisions set forth rules that govern the filing of statements of account and calculation of royalties for non-network television programming. *See* 17 U.S.C. §§ 111(d)(1)(A), (f)(5)(B). Most of the remaining provisions merely require that a cable system comply with any rules or regulations established by the FCC. *See* 17 U.S.C. §§ 111(c)(1), (c)(2), (e)(1)(F), (f)(2). The Networks do not assert that FilmOn X has failed to comply with any FCC rules or regulations.

Indeed, the Networks' expert admitted that many established and recognized cable systems today are national companies with the ability to retransmit broadcast programming throughout the country. (SOF 28.) Thus, to rule that FilmOn X does not qualify as a cable system simply because its technology could be used to provide nationwide access to broadcast television would be nonsensical and contradictory.

**5.** **FilmOn X's System Is Designed To Restrict Retransmissions On A Geographic Basis.**

Assuming this Court (or the FCC) determines that cable systems should restrict their retransmissions of broadcast content on a geographic basis, Internet retransmission services today are certainly capable of doing so.

In the past, FilmOn X restricted retransmissions on a geographic basis. (SOF 29.) It has continued to develop a robust system to restrict retransmission of OTA content to viewing devices (*e.g.*, televisions, computers and mobile phones) located within the designated market area ("DMA") of the original broadcast. (SOF 30.) FilmOn X has adopted a conservative approach to DMA verification – denying subscriber access to view OTA content unless there is a positive confirmation that (1) the user has a physical address based on a credit card check within the applicable DMA, and (2) the viewing device is located within the applicable DMA at the time of the retransmission. (SOF 30.) FilmOn X's system is local in nature.

**6.** **There Is No Requirement In The Copyright Act That A Cable System Own Or Control The Transmission Path.**

Nothing in the Copyright Act requires that a cable system own, build or control the entire transmission path from the headend to the individual user to qualify for a statutory copyright license. Section 111(f) simply defines a cable system as a facility, located in any State, Territory, Trust Territory, or Possession." 17 U.S.C. § 111(f).

In fact, the definition of a "cable system" for the purposes of the Copyright Act is much broader than the definition of a "cable system" under the Communications Act. Where Congress intended to require an entity to own or control the transmission

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

path, it did so expressly in the Communications Act by defining a "cable system" for the purposes of that statute only as "a facility, consisting of a set of closed transmission paths."  *See* 47 U.S.C. § 522(7). To this day, many entities that do not qualify as cable systems under the Communications Act (including non-cable MVPDs) may still obtain statutory copyright licenses as cable systems under Section 111.[10]  In fact, the FCC is currently considering the adoption of a new rule that would classify certain Internet-based services (like FilmOn X) as MVPDs under the Communications Act, despite the fact that they "may use a third party's distribution facilities in order to make video programming available to subscribers." (*See* SOF 24.) Section 111 accommodates a wide range of retransmission technologies.

**E.     The *ivi* Decisions Do Not Control This Case.**

The Networks urge this Court to "defer to the Copyright Office's interpretation of Section 111 as excluding FilmOn X's past and future Internet-based retransmission service." (Mot. at 9.) The Networks mischaracterize the views of the Copyright Office and overstate the amount of deference owed to the policy views expressed by this agency, especially in light of *Aereo's* technology agnostic approach, which calls the decisions in *WPIX, Inc. v. ivi, Inc.* into serious doubt.

**1.     The Policy Views Of The Copyright Office Are Not Entitled To *Chevron* Deference.**

The Copyright Office has not issued any formal rules or regulations entitled to *Chevron* deference. As the Supreme Court has explained, "the overwhelming number of cases applying *Chevron* deference have reviewed the fruits of notice-and-comment

---

[10] For example, in the 1990s, the Copyright Office recognized that a type of MVPD that delivers video programming over wireless telecommunications technology is eligible for the Section 111 license, even though it does not meet the statutory definition of a cable system under the Communications Act. Raney Decl., Dkt. No. 167.8, Ex. M (Reply Comment to NPRM at p. 28, citing to 59 Fed. Reg. 67635, 67635 (Dec. 30, 1994).

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

18

rulemaking or formal adjudication." *United States v. Mead Corp.*, 533 U.S. 218, 219 (2001). "Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade[.]'" *Id.* at 587.

Presented with several opportunities to issue formal rules or regulations on whether Internet-based retransmission services are eligible for a Section 111 license, the Copyright Office has declined. In fact, the office has done the opposite in relation to companies like FilmOn X. Instead of definitively accepting or rejecting the statements of account submitted by FilmOn X, the Copyright Office accepted the submissions on a "provisional basis" and ultimately deferred to the courts to resolve the issue.   (SOF 31.) The Copyright Office also noted that "the pendency of a proceeding before the Federal Communications Commission concerning whether Internet-based services may be treated as 'multichannel video programming distributors' for purposes of communications law" could impact its analysis under Section 111 and lead the Copyright Office to change its position.  (SOF 31.)

Unable to cite Copyright Office rules or regulations, the Networks are left to interpret policy statements, including a 1997 policy report to Congress,[11] testimony by the Register of Copyrights in 2000 before Congress[12] and a 2004 policy report to

---

[11] RJN, Ex. D (Copyright Office, *A Review of the Copyright Licensing Regimes Covering Retransmission of Broadcast Signals* (1997)).

[12] Plaintiffs' Appendix, Ex. 2 (Statement of Marybeth Peters, Register of Copyrights, Before the House Subcommittee on Courts and Intellectual Property, 106th Congress, 2d Sess. (June 15, 2000)).

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

Congress.[13]  But none of the statements contained in these policy warrant *Chevron* deference. *See Christensen*, 529 U.S. at 587 (expressions of policy judgment made by the Copyright Office or its representatives about what the law should be are not entitled to substantial deference); *WPIX, Inc. v. ivi, Inc.* ("*ivi I*"), 765 F. Supp. 2d 594, 605 (S.D.N.Y. 2011) (applying *Skidmore* rather than *Chevron*-style deference).

Under *Skidmore*, "courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 227. Not only has the Copyright Office indicated deference to the courts and the FCC in this instance, the Copyright Office's historical treatment of Internet retransmission services is inconsistent with Section 111, which plainly encompasses Internet technology. No *Chevron* deference is warranted.

### 2.    The Copyright Office Has Found Companies "Substantially Similar" To Traditional Cable Systems Entitled To A License.

In its 2008 policy report, the Copyright Office expressed support for companies that are "substantially similar" to traditional cable systems:

> [N]ew systems that are *substantially similar* to those systems that already use Section 111, should be subject to the license. Thus, systems that use Internet protocol to deliver video programming, but are the same in every other respect to traditional cable operators, should be eligible to use Section 111 to retransmit broadcast signals, provided that these systems abide the same broadcast signal carriage statutory provisions and FCC exclusivity requirements applicable to cable operators.

RJN, Ex. H (SHVERA Report at 181 (emphasis added)); *see also id*. at 188 ("the Office is not against new distribution models that use Internet protocol to deliver programming, but only opposes the circumstance where any online content aggregator would have the ability to use a statutory license to sidestep private

---

[13] Satellite Home Viewer Extension and Reauthorization Act (the "SHVERA Report"), Pub. L. No 108-447, 109, 118 Stat. 3393, 3407–08 (2004)).

1  agreements [ ] free from any of the limitations imposed on cable operators and

2  satellite carriers by the Communications Act and the FCC's rules.").

3        In fact, the Copyright Office recognized AT&T U-Verse and Verizon FiOS—

4  both of which use Internet protocol technology to deliver video content—may be

5  cable systems under Section 111. (SOF 33.) In making this determination, it reasoned

6  that "Section 111(f) defines 'cable system' quite broadly." RJN, Ex. H (SHVERA

7  Section 109 Report at 199). The office concluded that "AT&T's and Verizon's

8  operations can be viewed as cable systems and consequently, they may use the

9  Section 111 license to retransmit broadcast signals, provided that they adhere to all of

10  the FCC's broadcast signal carriage rules."[14]  *Id*. at p. v.

### 3.    FilmOn X Has Demonstrated An Ability And Willingness To Comply With FCC Rules And Regulations.

12        FilmOn X does not contend – as the Networks suggest – that any "'kid in the

13  dorm room' with just a TV set and an Internet connection" is entitled to a Section

14  111 license. (*See* Mot. at 17.) To obtain a license, a company must meet the

15  definition of a cable system under Section 111(f), comply with the requirements in

16  subsection (d) and comply with any rules or regulations imposed by the FCC. *See* 17

17  U.S.C. § 111(c)(1). FilmOn X has done so and will continue to do so.

18        As the Supreme Court recognized, FilmOn X – like Aereo – is "substantially

19  similar to" traditional cable systems, including CATV systems. *See Aereo*, 134 S.Ct.

20  at 2506-07. Like other cable systems, it receives and retransmits OTA content from

21  facilities located in the United States to subscribers over wires, cables, microwaves

22  and other communication channels that make up the physical layer of the Internet.

23

24  _____

25        [14] *See also* RJN, Ex. D (A Report of the Register of Copyrights:  A Review of the
   Copyright Licensing Regimes Covering Retransmission of Broadcast Signals, (Aug.

26  1, 1997) at 75 (unfair and contrary to Congressional intent to deny open video
   systems compulsory licensing when similar benefits are enjoyed by traditional cable

27  systems, satellite carriers and others).

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

21

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

(*See* SOF 19-22, 27.) As with AT&T U-Verse and Verizon FiOS, FilmOn X uses Internet protocol technology to deliver video programming to its subscribers.

Moreover, unlike ivi and the "kid in the dorm room," FilmOn X has demonstrated an ability and willingness to abide by FCC rules and regulations. It has met with FCC officials and submitted comments in support of the FCC's NPRM. (SOF 34.) FilmOn X is prepared to abide by any applicable rules or regulations in the event it is permitted to recommence transmissions of OTA content as a cable system. To that end, out of an abundance of caution, FilmOn X has developed a sophisticated geolocation system to restrict the delivery of OTA content to viewing devices located within the DMA of the primary transmission.[15]  (SOF 30.) And, although cable systems are not required to encrypt their secondary transmissions,[16] FilmOn X has developed an HTTPS encryption system to protect the transmission stream from piracy. (SOF 36.) It also has mailed retransmission request letters to local broadcast stations in markets where it intends to operate in the future, and will abide by the same broadcast signal carriage statutory provisions and FCC exclusivity requirements applicable to other cable operators. (SOF 37.)

**F.      FilmOn X Has Satisfied Section 111's Requirements.**

Finally, the Networks contend that "FilmOn X cannot properly assert Section

---

[15] The Networks also argue that "rejecting the Copyright Office's interpretation of Section 111 would place the United States in violation of several international treaties", but do not identify any of these treaties. In *ivi I*, the district court stated "the [Copyright] Office's principal concern was the perceived lack of ability to control the geographic scope of Internet retransmissions[,]" which "would place the United States dangerously close to violating its obligations under international treaties governing intellectual property rights, such as the Berne Convention."  *ivi I*, 765 F. Supp. 2d at 611. Even assuming any such violation obligation existed, FilmOn X – unlike ivi – has restricted its retransmissions on a geographic basis and has developed a sophisticated geolocation system. (SOF 29.)

[16] In fact, until October 12, 2012, the FCC prohibited encryption. Supp. RJN, Ex. C (FCC Report and Order 12-126 (2012)).

111(c) as a defense to past infringements" because it "failed to comply with the conditions of Section 111 when it retransmitted Plaintiffs' copyrighted programming." (Mot. at 17-18.) Neither the law nor the evidence supports this contention. To the contrary, there is undisputed (and substantial) evidence showing that FilmOn X has complied with Section 111.

**1.   FilmOn X Charged Subscribers For Local Channel Packages And Its Provision Of Some Content On A Free Trial Basis Does Not Preclude It From Being A Cable System.**

Although some programming was available for free on a trial basis, FilmOn X offered and sold local channel packages in high-definition to its subscribers. (SOF 18.) Accordingly, the evidence shows that subscribing members of the public did pay for FilmOn X's past service—which is more than sufficient to establish that FilmOn X made "secondary transmissions of [broadcast] signals . . . to subscribing members of the public who pay for such service[.]" 17 U.S.C. § 111(f).

The Networks cite no legal authority to support their claim that Section 111 prohibits cable systems from offering OTA content for free on a limited trial basis. There is no such authority. In fact, a free trial period is a commonly accepted marketing tactic to increase viewership of video programming content. *See, e.g.*, *San Juan Cable LLC v. Telecommunications Regulatory Bd. of Puerto Rico*, 598 F. Supp. 2d 233, 236 (D.P.R. 2009) (company operating as a cable system within the meaning of the Cable Act even though it was running a trial period without paying subscribers). FilmOn X's employment of a free trial period does not deprive it of the right to a Section 111 license.

**2.   FilmOn X Did Not Materially Alter The Content Of Particular Programs Or The Commercials In The Primary Transmission.**

Section 111(c)(3) prohibits "willful[] alter[ing] by the cable system through changes, deletions, or additions" of the "content of the particular program in which the performance or display is embodied, or any commercial advertising or station announcements transmitted by the primary transmitter." The purpose of this

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

23

subsection of Section 111, as shown by legislative history and case law alike, is to protect against the deletion or substitution of commercials and other programming content in the primary transmission.

For instance, a report by the Committee on the Judiciary regarding the 1976 Copyright Act, dated September 3, 1976, labels Section 111(c)(3) as "Commercial Substitution."  Supp. RJN, Ex. A (H.R. Rep. No. 1476, 94th Cong., 2d Sess. at 93, reprinted in 1976 U.S. Code Cong. & Ad. News at 5708). The report states that "[i]n the Committee's view, any willful deletion, substitution or insertion of commercial advertisements of any nature by a cable system, or changes in the program content of the primary transmission, significantly alters the basic nature of the cable retransmission . . . ."  (*Id*.) In *Hubbard Broadcasting, Inc. v. Southern Satellite Systems, Inc.*, 777 F.2d 393, 403-04 (8th Cir. 1985), the court cited this report and explained that allowing such commercial substitution would "harm advertisers, and, in turn, the copyright owner, whose compensation for the work is directly related to the size of the audience that the advertiser's message is calculated to reach."  *Id.*

FilmOn X did not materially alter the content of the broadcast programming. (SOF 39.)  Instead, it retransmitted broadcast content received over public airwaves. (SOF 19.) As in *Hubbard*, there has been no assertion that FilmOn X "has ever substituted or in fact has ever attempted to substitute commercials originally placed on the [broadcast] signal . . . ."  777 F.2d at 404. FilmOn X did not add any new advertisements to the broadcast stream itself, but merely played pre-roll advertisements while the secondary transmission stream loaded for the user to view. (SOF 40.) However, even if FilmOn X altered certain content, it does not lose its entitlement to a Section 111 license. "The compulsory license provided for in Section 111(c) is contingent upon fulfillment of the requirements set forth in section 111(d)," **not** Sections 111(c)(2) or (c)(3). Supp. RJN, Ex. A (H.R. Rep. No. 1476, 94th Cong., 2d Sess. at 95; see also 17 U.S.C. § 111(c)(1)).

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

### 3.    FilmOn X Filed Corrected Statements Of Account.

FilmOn X filed the appropriate documentation with the Copyright Office. On June 18, 2015, FilmOn X submitted revised account statements, along with the appropriate fee of $3,700.00, to the Copyright Office pursuant to 37 CFR 201.3(e).[17] (SOF 32.) These revisions added inadvertently omitted stations. (*Id.*)

### 4.    FilmOn X's Retransmissions Were Permissible.

Contrary to the Networks' contention, the plain meaning of "permissible" does not equate to "affirmatively authorized."  The word "permissible" is commonly used to refer to something that is permitted or allowed because it does not break any rules, laws or regulations. *See, e.g.*, Oxford English Dictionary, *available at* http://www.oxforddictionaries.com/us/definition/american_english/permissible. Consistent with the common sense interpretation, courts and the Copyright Office have recognized a company may be entitled to a Section 111 license even where the FCC does not affirmatively regulate that company. *See Nat'l Broad. Co., Inc. v. Satellite Broad. Networks, Inc.*, 940 F.2d 1467, 1471 (11th Cir. 1991) ("rebroadcast was permissible because no rule or regulation forbade it."); *ivi I*, 765 F. Supp. 2d at 616 n. 33 ("the Copyright Office's tentative endorsement of the AT&T U–Verse system, which does not appear to be subject to the Communications Act, implies that the Office does not believe that in order to qualify as a cable system under Section 111, an entity *must* be governed by the FCC.").

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny the Networks' motion for summary adjudication and rule in FilmOn X's favor.

---

[17] The Copyright Office allows cable systems to file late or to file revisions to statements, so long as the necessary fees are paid. *See, e.g.,* 37 CFR 201.17(k)(4).

FILMON X'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

1    Dated: July 2, 2015                Respectfully submitted,

2

3                                       By:  /s/  Ryan G. Baker

4                                            Ryan G. Baker
                                             BAKER MARQUART LLP
5                                            10990 Wilshire Blvd., Fourth Floor
                                             Los Angeles, California 90024
6                                            (424) 652-7800 (telephone)
                                             (424) 652-7850 (facsimile)
7

8                                            Attorneys for Defendants and
9                                            Counterclaimants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER MARQUART LLP
10990 WILSHIRE BOULEVARD, FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90024
Tel: (424) 652-7800 • Fax: (424) 652-7850

FILMON X'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT