ROBERT A. GARRETT (*Pro Hac Vice* pending)
Robert.Garrett@aporter.com
JOHN C. ULIN (State Bar No. 165524)
John.Ulin@aporter.com
JAMES S. BLACKBURN (State Bar No. 169134)
James.Blackburn@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California  90017-5844
Telephone:  (213) 243-4000
Facsimile:  (213) 243-4199

*Attorneys for Plaintiffs NBCUniversal Media, LLC, Universal Network Television, LLC, Open 4 Busines Productions, LLC, NBC Subsidiary (KNBC-TV) LLC, Telemundo Network Group LLC, WNJU-TV Broadcasting LLC, American Broadcasting Companies, Inc., ABC Holding Company, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., and Big Ticket Television, Inc.*

(Additional counsel noted in signature block)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX TELEVISION STATIONS, INC., *et al.*,<br><br>                Plaintiffs,<br>     v.<br>FILMON X, LLC, *et al.*,<br><br>                Defendants.<br>NBCUNIVERSAL MEDIA, LLC, *et al.*<br><br>                Plaintiffs,<br>     v.<br><br>FILMON X LLC, *et al.*,<br><br>                Defendants. | Case No. 2:12-cv-06921-GW-JCx (consolidated)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR A STAY**<br><br>Judge: Hon. George H. Wu<br><br>Courtroom 10 |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR A STAY

Plaintiffs hereby respond to the *Ex Parte* Application for an Alternate Stay (the "Application") by Defendants FilmOn X, LLC, FilmOn.TV Networks, Inc., FilmOn.TV, Inc., FilmOn.com, Inc. and Alkiviades David (collectively, "FilmOnX").

## I. INTRODUCTION

FilmOnX's Application is procedurally improper and substantively incorrect. FilmOnX's claimed "emergency" purportedly is based on the pending Notice of Proposed Rulemaking (the "NPRM") by the Federal Communications Commission ("FCC"). FilmOnX waited until two days before the upcoming hearing on the parties' Section 111 summary judgment motions to seek a stay based on the NPRM, even though the FCC issued the NPRM over seven months ago in December 2014. If FilmOnX believed the NPRM warranted a stay of this case, it should have requested such a stay promptly after the FCC issued its NPRM. Alternatively, FilmOnX could easily have included its stay arguments in its briefing of the parties' cross-motions. At the very latest, FilmOnX should have made its stay request in its rebuttal brief, which was filed a week after the June 26 statements by FCC Chairman Wheeler that FilmOnX now claims necessitates its motion. FilmOnX's rebuttal brief referred to Chairman Wheeler's comments and attached them to its Supplemental Request for Judicial Notice. *See* Dkt. No. 191 (Ex. B). FilmOnX instead waited until two days prior to the hearing on the parties' cross-motions for summary judgment to seek a stay. FilmOnX's self-created emergency is not a sufficient basis for *ex parte* relief, and this Court should reject FilmOnX's last-minute effort to supplement its briefing with a new stay argument. *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

FilmOnX's Application also should be rejected because it is meritless. The Copyright Office, not the FCC, administers the Section 111 license. And while the FCC is authorized to regulate certain conditions under which video services may retransmit broadcast signals, it has no power to grant FilmOnX a compulsory license for the copyrighted programming transmitted by those signals. No matter the

outcome of the FCC's vote on the pending NPRM, it simply will not resolve or simplify the one issue presented by the pending motions -- FilmOnX's claim of entitlement to a Section 111 license under the *Copyright Act*. Nor is the NPRM likely to result in new FCC regulations on the expedited schedule claimed by FilmOnX. Even if the FCC votes on the NPRM this fall, it is likely that any implementation of its recommendations will be delayed by judicial and administrative challenges to the new rules. Accordingly, there is no merit to FilmOnX's stay request and it should be denied.

II.  FILMONX HAS NO BASIS FOR EX PARTE RELIEF

"[F]iling an ex parte motion … is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire." *Mission Power*, 883 F. Supp. at 492. Such applications are unfair to the opposing party because the moving parties' papers often reflect days or even weeks of preparation, whereas the opposing parties have twenty-four hours to respond. *See id.*; Court's Procedures and Schedule, General Information ("[A]ny opposition must be filed not later than 24 hours after the filing of the ex parte application.") *available at* http://www.cacd.uscourts.gov/. Such applications are also unfair to the Court and other litigants since the Court is required to "drop everything" to review the applications, interrupting and delaying the proceedings of other litigants. *See id*. at 492. Accordingly, *ex part*e motions are solely for extraordinary relief.

To justify seeking *ex parte* relief, the moving party must show that it "is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id*. Any "emergency" here is entirely of FilmOnX's own making and its *ex parte* application is nothing more than a belated attempt to supplement its summary judgment briefing with arguments it chose not to make earlier.

The NPRM on which FilmOnX bases its *ex parte* application was adopted by the FCC nearly *seven months ago* on December 17, 2014. Declaration of James S. Blackburn in Support of Plaintiffs' Opposition to Defendants' *Ex Parte* Application

3
PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR A STAY

("Blackburn Decl.") at ¶ 3 & Ex. A. FilmOnX cannot deny its months-long knowledge of the NPRM; as detailed in its June 18, 2015 opening summary judgment brief, FilmOnX submitted opening and reply comments to the NPRM to the FCC on March 3, 2015 and April 1, 2015. *See* Dkt. No. 165 at 10. In that same brief, FilmOnX estimated that it would take fourteen months for the FCC to vote on its proposal. *Id.* Yet FilmOnX did not argue that the FCC's proposed rulemaking would impact its purported entitlement to a Section 111 license, and made no mention of a stay pending that decision. *Id.*

Having no excuse for its failure to raise the stay issue in its opening brief, FilmOnX attempts to tether its belated request to a statement made by FCC Chairman Wheeler on June 26, 2015 that he "expected" a vote on the NPRM by the fall of 2015. *See* Application at 1-2. But FilmOnX's rebuttal summary judgment brief filed on July 2, one week after Chairman Wheeler's remarks, referred to these remarks and submitted them to this Court. Yet FilmOnX did not argue then that this action should be staying pending FCC action. *See* Dkt. No. 191. Instead, FilmOnX waited until July 14 -- two days before the hearing on the parties' summary judgment motions -- to file an *ex parte* application seeking a stay based on information in its possession for at least seven months. Any argument by FilmOnX regarding a stay easily could have been made in its opening or rebuttal summary judgment briefs, but FilmOnX chose not to do so. FilmOnX should not be allowed, under the pretext of *ex parte* relief, to supplement its summary judgment briefing at the eleventh hour.

III. <u>FILMONX HAS NO BASIS FOR A STAY PENDING FCC ACTION ON THE NPRM</u>

FilmOnX requests that this Court stay these proceedings pending a FCC vote on the NPRM seeking comment on whether the FCC's definition of multi-channel video programming distributor ("MVPD"), which currently encompasses both cable operators and satellite services (47 U.S.C. § 522(13)), should be expanded to include certain providers of Internet-delivered streams of linear video programming,

4

including retransmission of broadcast signals.  Specifically, the FCC is considering adopting "new rules and regulations that will regulate over-the-top providers such as FilmOn X, LLC as MVPDs."  Application at 1.  It is *not* considering amending its rules and regulations to extend to over-the-top providers any of the type of regulations that have applied to cable systems since the 1970's and that, among other factors, influenced Congress to accord compulsory licensing to a heavily regulated cable industry.  *See* Dkt. No. 189 (Plaintiffs' Rebuttal Br. at 20-21).

FilmOnX's stay request rests on two assumptions:  (1) that a determination to include such Internet-delivered linear video programming services within the MVPD definition will somehow necessitate a different interpretation of Section 111; and (2) that such action is imminent.  Neither assumption is correct.  The FCC has no power to grant a compulsory license, or to issue any regulations deeming Internet retransmission services "cable systems" for purposes of Section 111.  And, notwithstanding the comments by FCC Chairman Wheeler that a vote on the NPRM may occur as early as fall of this year, it is unlikely that such a vote will result in an immediate change to FCC rules, let alone any change in the Copyright Office's position with respect to Section 111.

While FilmOnX nominally bases its stay request on the court's inherent power to control its own docket, *see Landis v. N. Am. Co.*, 299 U.S. 248 (1936), the only substantive basis FilmOnX identifies for its stay request is the doctrine of "primary jurisdiction," which allows a court to stay or dismiss a case where it is likely that the case will "require resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  Application at 4 (quoting *U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1952)).  But, as FilmOnX itself has acknowledged, it is the *Copyright Office*, not the FCC, that has been charged with oversight of the Section 111 license.  *See* Dkt. No. 129 at 6-7 ("[T]he United States Code charges the Copyright Office with oversight of the cable compulsory license").  Because issues regarding the Section 111 compulsory license

have not been "placed within the special competence" of the FCC, the doctrine of primary jurisdiction simply does not apply.

The oversight of the Section 111 license by the Copyright Office -- not the FCC -- renders FilmOnX's authorities inapposite.[1] *See, e.g., Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-15 (dismissing a claim against cable company where claim fell within the FCC's rulemaking authority and could be referred to the FCC for an administrative ruling); *Digital Comm. Network, Inc. v. AT&T Wireless Services*, 63 F. Supp. 2d 1194 (C.D. Cal. 1999) (same). FilmOnX has not and cannot identify any administrative proceeding that is pending or that could be filed by FilmOnX with the FCC to resolve its claimed entitlement to a Section 111 license. Absent such a proceeding, there is no mechanism for this Court to refer FilmOnX's Section 111 defense to the FCC for resolution.

Even if the FCC ultimately adopts its proposal to classify certain online video programming distributors as MVPDs, this action will extend certain rights and obligations within the FCC's jurisdiction to these providers under the terms of whatever rules the FCC may adopt, but it will not -- *and cannot* -- extend the Section 111 cable compulsory license to them. Indeed, in the NPRM, the FCC itself recognizes the possibility that the Copyright Office may not reconsider its determination that Internet retransmission services are ineligible for the Section 111 license *even if* the FCC adopts its proposal. Blackburn Decl., Ex. A (NPRM at 23 ("If we adopt the Linear Programming Interpretation and the Copyright Office does not afford statutory licenses to Internet-based video providers, how would we construe a

---

[1] If anything, the cases cited by FilmOnX in support of its stay request support *Plaintiffs'* position that this Court should defer to the Copyright Office's determination that Internet retransmission services fall outside of the Section 111 license. The primary jurisdiction rests, *inter alia*, "both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently) . . . and on the advantages of allowing an agency to apply its expert judgment." *Allnet Comm'ns. Service, Inc. v. Nat'l Exchange Carrier Ass'n,* 965 F.2d 1118, 1120 (D.C. Cir. 1992). These concerns are similar to the rationales for deference to an agency's interpretation of a statute under *Chevron USA, Inc. v. Natural Resources Def. Council*, 467 U.S. 837 (1984). *Id.*

1  broadcaster's obligation to negotiate in good faith?")); *see also Landis*, 299 U.S. at 256
2  (For a stay in favor of another proceeding to be appropriate, it should "in all likelihood
3  [] settle many and simplify" all of the issues in the case). FilmOnX has made no
4  showing that any issue, let alone most, raised by its Section 111 defense and
5  counterclaim will be resolved by the FCC if a stay is granted.
6        Finally, FilmOnX assumes, based solely on a single comment by FCC Chairman
7  Wheeler, that the FCC is expected to vote on its MVPD proposal by fall of this year.
8  (Opp. at 5). But even if the FCC votes to adopt its proposal, that is no guarantee that
9  changes to the FCC's MVPD definition are imminent. Affected parties may bring
10 legal action to enjoin or set aside the proposed rulemaking, *see* 47 U.S.C. § 402, and/or
11 petition for reconsideration of the FCC's action, *see* 47 C.F.R. § 1.429, including a
12 request that implementation of the rulemaking be postponed while the matter is
13 appealed or under reconsideration. And, after the end of this process, the Copyright
14 Office and/or Congress still would need to decide whether the FCC's rulemaking
15 warranted reconsideration of the Office's longstanding position that Internet
16 retransmission services are not entitled to the Section 111 license. A stay of such
17 undefined duration based on such uncertain future events is not an appropriate exercise
18 of this Court's discretion. *See Landis v. North American Co.*, 299 U.S. 248, 255
19 (1936) (a stay of indefinite duration absent a pressing need is an abuse of discretion).
20 IV.   <u>CONCLUSION</u>
21       For all of the foregoing reasons, Defendants' *Ex Parte* Application should be
22 denied.

| | | |
|---|---|---|
| 1 | Dated: July 15, 2015 | ARNOLD & PORTER LLP |
| 2 | | |
| | | By: /s/ James S. Blackburn |
| 3 | | JAMES S. BLACKBURN |
| 4 | | *Attorneys for Plaintiffs NBCUniversal Media, LLC, Universal Network Television, LLC, Open 4 Business Productions, LLC, NBC Subsidiary (KNBC-TV) LLC, Telemundo Network Group LLC, WNJU-TV Broadcasting LLC, American Broadcasting Companies, Inc., ABC Holding Company, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., and Big Ticket Television, Inc.* |
| 10 | Dated: July 15, 2015 | JENNER & BLOCK |
| | | By: /s/ Julie A. Shepard |
| | | JULIE A. SHEPARD |
| | | *Attorneys for Plaintiffs Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, and Fox Broadcasting Company* |